Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. All right, good morning. We have Judge Wynn, Judge Floyd, and myself, Judge Niemeyer, and we're calling the next case, which is Stegman v. Gannett Company, and we have Mr. Porter and Mr. Mattson. You both ready? Yes, Your Honor. Yes, Your Honor. All right, why don't we begin and hear from Mr. Porter first. Thank you, Your Honor. May it please the Court, Gregory Porter for the plaintiff appellant. The plaintiff alleged that the defined contribution plan fiduciaries in this case reached their duties of prudence and diversification under ERISA by failing to divest the plan of a single security stock fund, the Tegna stock fund, that represented as much as 21 percent of the plan's assets during the relevant period. This Court, the Supreme Court, and other courts have said that single security stock funds are inherently undiversified and generally imprudent for ERISA. I understand that, but as I read your brief, I was troubled by the fact that this plan is an elective plan and has a menu of funds that can be selected by the investor, and so that instead of assessing a given fund with which the investor is stuck and lacks diversification, here the investor doesn't have to invest a single dollar in this fund. He can select any funds, and in fact, these investors did reduce the percentage they had, so it makes no sense to look at a single fund and say that is the makeup of a whole plan. The plan is a menu, isn't it? It's a potpourri. You go along and you pick what you want and invest in it, and you can move assets. That troubles me about this case. In other words, all of your arguments seem to rest on the fact that they had this one fund devoted to the company stock, and that's always a problem. That's always a problem, but this plan is totally elective. It's a 401k, and they get to put the money where they want it and how much they want. That's certainly true, Your Honor, but first, from a factual basis, the plan participants didn't choose the Tegna stock fund. The Tegna stock fund came to them into the plan via a stock split, and the fund existed primarily because the employer had been matching employee contributions with employer stock prior to the spinoff, so the plan participants didn't affirmatively put their money in this fund. They could have taken all of their money out of it and put it in another fund. I think this goes to the heart of the issue of why the district court erred and why the Fifth Circuit erred in the recent case that was decided last Friday involving the Phillips 66 plan. The answer is this, Your Honor, is that ERISA's fiduciary duties under 404 apply equally to all retirement plan fiduciaries. The statute makes no distinction between defined contribution plan fiduciaries who manage a plan on a portfolio-wide basis. There is no distinction. That's not the issue. That's not the issue. The issue is whether in the menu, in the offering, a plan can have one fund devoted entirely to company stock as long as they offer other funds, diversified funds, under a 401k, which it does make a difference that it's a defined benefit plan that has these elections. In other words, it's totally different from a plan where they're managing your pension fund, and they choose to invest in the fund and where to invest and not invest. It seems to me there's a problem there, but here we have a different structure, and I'm sure it's a question of whether that implicates the arguments you make. Your Honor, it does. Again, when you say company stock fund, what we're really talking about, we're not talking about employer stock. We're talking about a single security stock fund that is not employer stock. ERISA's express statutory exemption for employer stock is not implicated. Our lawsuit, and I think that's important because when Congress wanted to exempt a defined contribution plan fiduciary such as the fiduciaries here from the duties to diversify and from the duties of prudence, it knew how to do so. It created an exception for employer stock because it wanted to encourage investments in employer stock. The fact that it didn't create a broader exception for defined contribution plans, for participant selection plans such as this, tells us that no such broader exemption applies. Indeed, if Congress, if the Fifth Circuit is right and the trial court is right, that all a defined contribution plan fiduciary has to do is offer an array of investment options, and it doesn't matter if any single one of those options is imprudent, and that's a complete defense to a claim of breach of duty, then you wouldn't even need the employer stock exemption because employer stock would be swept up under that broader exception. Let me ask you this. You claim that Dudenhoffer doesn't apply to this case. Is that because this is an uncompensated risk case as opposed to a compensated risk? Yes, Your Honor. That's one of the factors in our analysis, and as Your Honor clearly knows from having read the cases, case law and modern portfolio theory speak to the concepts of compensated risk and uncompensated risk. The compensated risk is the one takes by investing in a particular security that's traded on an efficient market and presumes that all the risks associated with that particular security are impounded into the stock price. Uncompensated risk is the risk that occurs when you concentrate too much of an investment portfolio in a particular security and thereby take on risk that is not compensated by the efficient market. That's essentially the teaching of Dudenhoffer. That's kind of what this court was getting at in the Tatum case. Just kind of briefly to circle back to Judge Niemeyer's question, a separate answer, apart from the statute itself with regard to the participant choice, is this court has already foreclosed that analysis. In the DeFelice case, this court held that it was no defense to a breach of duty claim that the defined contribution plan offered a wide array of investment options. This court has already addressed that issue and foreclosed it as a both with respect to the trial court's decision and the Fifth Circuit decision. Moreover, in the Tatum series of this decision, which involved the defined contribution, exactly the same fact pattern, two companies separate. You have a defined contribution plan that has employer stock as well as non-employer stock that arose from the spinoff. The plaintiffs sue over the investment decision with respect to the non-employer stock fund. And the plaintiffs in that case get a trial on the breach of duty. I don't see how the plaintiffs in Tatum get a trial. We don't even get past the pleadings on essentially the same fact pattern. So we submit that the issue as to participant choice is completely irrelevant to the threshold pleading requirements of pleading a duty to diversify and a breach of the duty of prudence. To the extent it has any application whatsoever in any context, there is an exemption, safe harbor source for defined contribution plans under section 404A2 of ERISA, which provides that as long as a fiduciary shows, satisfies a 25-factor test, then to the extent a loss arises from a participant's individual investment choice, that can't be laid at the fiduciary's door. But that's an affirmative defense and not appropriate for resolution on the pleadings. Moreover, this court has already held in defalice that that defense does not apply as a threshold matter to a fiduciary's duties to ensure that every single plan offering in the plan is prudent. So... Let me ask you a question, at least in terms of clarification, to make sure I understand what you said earlier. The Tegna stock that's here used to be employer stock before the spinoff. Is that what you're saying? Well, no. Well, Tegna... Let me explain what the facts are, and maybe that'll help answer your question, Your Honor. I was just responding earlier. Tegna didn't exist as a company. It seems like I thought I heard you say something to that effect. I want to make sure that was not it. That's all I need to know. Well, Tegna stock did not exist as a company until it separated from Gannett. So, Gannett, the employer of my clients, is the old mainline publishing company, and Tegna is more the new media company. And so, at separation, the Gannett stock fund was the employer stock fund for Gannett employees, and the Tegna stock fund was the employer stock for Tegna employees. Yeah, but Judge Wynn's question... Judge Wynn's question was, before the separation, it was an employer. I mean, the name changes are different, but it was the company that existed before the spinoff is the stock that was included. Then there was a spinoff of the publishing versus the non-publishing, and they assigned different names to them. But sticking with pre-separation, there was only one company, and it was the employer. That's correct, and there was only one stock fund, and it was Gannett stock. Yeah. Yes. So, once you brush aside the notion that you're left with the typical pleading standards for a breach of the duty of prudence and a breach of the duty to diversify, and we clearly pled a breach of the duty of prudence. We pled that the 2015 Employee Matters Agreement between Tegna and Gannett required the divestment of the Tegna stock fund. Under Tatum, this court said that a prudent fiduciary would divest a single security stock fund under essentially the same circumstances. That Employee Matters Agreement was incorporated by reference into the plan document. Some of the plan fiduciaries didn't even know about this Employee Matters Agreement, even though their job as fiduciaries is to be familiar with the governing documents with respect to investments. The plan fiduciaries were repeatedly warned about the risks inherent in a single security stock fund. They were warned in August of 2015. They were warned by the plan's own auditor, Ernst and Young, that single security stock funds carry inherent concentration risk. Ernst and Young doesn't issue warnings to plan fiduciaries lightly. In 2015, they hired an investment consultant to provide detailed information about the plans and investments, but they didn't hire them to provide any information about the Tegna stock fund. They would get quarterly reports saying about the performance of each and every option in the plan, detailed financial metrics, but nothing about the Tegna stock fund except for the fact how much was invested in it. That's not the prudent conduct with respect to monitoring investments funds that the Supreme Court commanded in the Tibble case. So when do you maintain this benefit plans committee should have taken up the Tegna issue? They should have started considering it from day one, given the fact that the Employee Matters Agreement commanded them to divest the Tegna stock fund. Now, I'm not saying they should have sold it on day one, but they should have undertaken serious consideration of what to do about it by day one, on day one. And according to their own advisors, they could have sold the stock in one big block without depressing the stock price. So they could have moved very quickly on liquidating the stock fund. Certainly. So, I mean, the sort of, I guess, Judge Niemeyer's question originally, when would it be appropriate for an ERISA fiduciary to force the plan participants out of a defined benefit plan essentially that they chose? When they deem it's imprudent. If they deem the fund is imprudent, the fiduciary is required to move the fund. That's what the Supreme Court said in Tibble. Why is it imprudent to have, among a choice of funds, a fund dedicated exclusively to one company with the disclosure that that's what it is? I mean, the company is relevant because it was a grandfather company. But the question is, why is it imprudent to keep a single fund in a single stock? I mean, for instance, another offering might be one that has Apple and Amazon in it, nothing else. And they say you can invest in Apple and Amazon in this fund. Is that imprudent? Well, if it's part of a menu? Well, under this court's law, under defalese, the court is to examine whether each fund is prudent standing alone. I understand. But my question is, when you're offering an array of funds and you want to offer a health care fund, you want to offer an Amazon-Apple fund, you want to offer a Tegna fund, and you have a bunch of others, highly diversified, is it imprudent to have that kind of offering? Well, I would submit, Your Honor, that it would not necessarily be imprudent to offer a health care fund because that itself is a diversified fund with multiple securities in it. Well, what if I put just three stocks in? I mean, you're trying to duck the question. My question is, basically, my question is, if you offer specialized funds and you let the investor choose, it's hard for me to understand what the imprudence is of offering a single company fund. As long as you have other choices. Right. The imprudence lies in the fact that the fund is inherently risky. That's what this court recognized in Tatum and defalese, and it's inherent. Except it was listed on the markets and the risks were disclosed in the price. There's no suggestion in this case that the fund was not represented by the market price. No, we make no such representation, Your Honor. We're not saying that the risk to the particular security were not reflected by the market price. What we're saying is that this particular fund had massive concentration risk because- Well, it's 100%. It's 100%. That's right. There's no diversity. My question to you, and you're not answering it, can you prudently offer a single company fund as one of the choices? No, you cannot. No, you cannot. And what case says that? Defalese says that. It does not say that. I respectfully suggest it does not say that. It basically says on a transaction you have to exercise prudence, but there may be a good reason for deciding to offer a single fund. You could be high on- Perhaps there is. Perhaps under the totality of the circumstances, one could argue. But this is a pleading, Your Honor. I think we plausibly allege that under the circumstances here that the fund is imprudent in light of the command to divest it, in light of its high correlation to the Gannett stock fund, in light of its high concentration, 21% of plant assets. Those are all- That's irrelevant if they don't need to be in it. In other words, you're not forcing any investor to have 21% of Tegna stock. They could all have zero level. That's the rub I'm having trouble with, and I'm not sure- Right. I understand the rub you're having trouble with, but with all due respect, Your Honor, the statute does not allow a fiduciary to escape liability simply because participants have a choice. The statute and this court- We have to start with the question of whether there's liability. I'm suggesting that the plan fiduciaries decided to offer this at a total concentration on one fund among others. We're not talking- I mean, that one fund concededly is not diversified, and it doesn't pretend to be. The question is, can a menu of funds that are in the be prudent? Theoretically, yes, but not under the facts presented here. I see I'm running out of time, so I'll reserve for rebuttal. All right. Thank you very much. Thank you, Your Honor. Mr. Mattson, we'll hear from you. Yes, Your Honor. Good morning, and may it please the court, Eric Mattson on behalf of the defendants. I wanted to start out by talking about the Schweitzer case. That's the one that came down just on Friday from the Fifth Circuit, and if ever there were two cases that were very similar, or it's not close to identical, it's these two. It's the exact same legal theories under more or less the same factual circumstances, spinoff of one company from another, the continuation of the legacy stock in the spun-off company, and plaintiffs allege that that was both imprudent and that it breached the duty of diversification. The Fifth Circuit came out squarely in a published opinion on Friday and said that does not state a viable claim. So it was dismissed on a motion to dismiss in the Fifth Circuit? Yes, Your Honor, it was. Okay. And so the Fifth Circuit essentially really kind of echoed a lot of the same points that the duty of diversification, when you're talking about that in the context of a 401k plan, requires that the overall menu be diversified, not that any single particular option that a participant can choose must be diversified. And it also rejected the prudence theory, the same ones that plaintiff is asserting here, either that the stock was too risky or that it was so concentrated that it was inherently imprudent and should not have been allowed to continue in the spun-off plan. So at the risk of stating the obvious, if this court follows Schweitzer, it will affirm the judgment of the district court. What plaintiff is asking this court to do is create a circuit split and reject the reasoning of Schweitzer and, of course, the district court as well. And I know that this court, like other courts of appeals, it's not that they never create circuit splits, they obviously do, but they don't do so unless there's a good reason to do so. And here there is no such good reason. Let me talk a moment about the Tatum opinion. The Tatum covered a lot of ground, but one piece of ground it did not cover was whether the plaintiff in that case had stated a viable claim in the first place. The facts there were quite dramatically different from what we have here. There, the fiduciaries acted precipitously. They acted too quickly and without enough thought in deciding to close the stock of the former affiliate very quickly after the spin-off. Here, the essential grievance that the plaintiff has presented is that the fiduciaries took too long. And let me just remind the court of just a couple of key facts here. One is that in the agreed that it was perfectly appropriate for that stock to be in the plan pre-spin-off. And plaintiff agreed that it was perfectly fine for that stock to remain in the spun-off company as one option for up to a full year after the spin-off. And so where we actually part ways with plaintiff is that what actually ended up happening is that the committee decided after about two years that it would close the fund and then gave participants one additional year, made an announcement. You've got one year. At some point during that year, feel free to sell your Tegna stock as you've been free to do all along. If you haven't sold it by the end of that year, then we are going to close the fund and move your money to another option. So really, when you think about it, what plaintiff is saying is not that the committee did something wrong. Plaintiff is saying that the committee did not act quickly enough. And so that then raises the question, well, where did this one year come from, this one year deadline? Is there something... They're saying, as I understand it, they acted imprudent. Is that the word, imprudent? Yes, Your Honor. And not diversifying this. And, you know, you allude to the Fifth Circuit case and they had a particular holding on diversification. Aren't we guided more so by the DeFelice case in our own case? Certainly DeFelice is relevant, but it's not nearly as relevant as what we were facing in the Schweitzer case. The DeFelice case was decided pre-Dudenhoffer and ultimately it held that the fiduciaries did act prudently by keeping the company stock in the plan, even as the case, even as the company spiraled towards bankruptcy. The Tatum case involved the case that we're talking about here. That's clearly relevant to the discussion we're having as well. But neither of them involved the precise theories that plaintiff is advocating in this case, Schweitzer did. DeFelice is of really pretty modest relevance because it did talk about that company stock. And in that case, the company actually went bankrupt and the participants to keep the stock in the plan. I also want to point out to just refer to this court's own precedent, which obviously is what binds this court, not what the Fifth Circuit does. But this court's own precedent in Tatum said this, this is a direct quote, the diversification and prudence duties. So the court's talking about both of those duties, the diversification and prudence duties do not prohibit a plan trustee from holding single stock investments as an option in a plan that includes a portfolio of diversified funds. I just want to understand this in terms of your diversification argument. Apparently, there was a cause to diversify at some point. And if it's a cause to diversify at one point, is there a cause to diversify at a different time? Or is it only at that point? The truth is, Your Honor, that in this circumstance, there's no single right answer about when it's appropriate to close a fund like this. This is a unique circumstance. You've got a situation where everybody agrees that it was appropriate for the stock to be in the plan before the spinoff. What happens at the spinoff? You've got some, that company's company, just it starts its life with the legacy stock still in its plan because of the split of the stock. And now it's there in the plan. And I suppose you could you could posit circumstances when you would want to close that fund immediately. You could posit circumstances when you would want to keep it open. And definitely, because after all, we don't need to posit circumstances at the 12 v. 6 stage. We take it in a light, most favorable way to take the assertions as true from the other side. And when you do that, what you'll see, Your Honor, is that in the proposed amended complaint, you'll see that those allegations are far more consistent with a finding of good fiduciary practices than they are with any kind of breach. You'll see that plaintiff alleged that the committee that was overseeing this plan received regular reports on the Tegna fund that showed the degree of concentration was declining over time. You'll see that they heard from experts that talked about the risks associated with any single stock plan for fund. And you'll see that they talked about the fact that people had chosen to leave their today. Let's give people time to make their own decisions, which is the fundamental theory behind 401k plans. In the first place, you provide a good, diverse menu of options to plan participants. And then the participants have a role to play. They can decide to put 1% or keep 1% of their assets and the Tegna stock fund. They can have it zero. They can have it 40. That's their choice to make. And it was that choice that prompted the Fifth Circuit and Schweitzer to find that it was appropriate to dismiss the claim at the outset of the case. How many options were there? Does the record show? Yes or no. The closest I can point you to, Your Honor, is in the appendix to the plan document, which is in the record. And plaintiff has never objected to being in the record. It describes roughly a dozen plan options, and it describes them by category. So for example, and this is quite common in 401k plans, you have a large cap mutual fund that invests in big companies around the United States. You might have a bond fund that invests in corporate bonds around the United States. You have a stable value fund that is a very low risk, low return fund. And on down the line. And that's in the appendix of the plan. But it's roughly a dozen other options. And again, let me emphasize, after the spinoff, the Tegna stock fund was frozen. And by that, I mean nobody in the Gannett plan could put an additional dollar into the Tegna stock fund. But everybody who had previously put their money into that fund was free to leave it there or take it out. It was up to them. And they could do that at any given moment, up until the time, roughly three years after the spinoff, when the committee said, we're closing the fund altogether. Is the Employees Matters Agreement, in this case, a planned document? It is not, Your Honor. It's not an agreement that governs. It's an agreement between the two splitting companies. And let me say what Employees Matters Agreement says is that, essentially, and I'm paraphrasing here, eventually, we expect that this Tegna stock fund will be closed. It says we're going to leave it up to the committee to decide when and how to close it. It does not say close it on day one. It does not say close it after a year. It does not say close it after five years. It says we think that eventually this fund ought to close. And of course, that is exactly what happened. It's just that it didn't happen as fast as plaintiff says it ought to happen. Let me ask you, if you have, as an offering, a single stock fund that has an efficient market price that's on a big exchange and the price reflects the risks, is it ever imprudent to make an offering of such a fund where the market price truly reflects the value of the stock? Well, I'm not making that assumption that you have a 401k with a broad menu choice. Then it's hard for me to imagine a scenario where that would be the case. If you, under Dudenhofer, you've got this stock option that's publicly traded and that is where the market price truly reflects the value of the stock, then it's hard for me to imagine a scenario where that would be imprudent with the key caveat that you've got to give people a range of choices so that they can put their money in a stable value, low risk, low return fund, or a mutual fund, or a bond of stocks, or a bond fund of some kind. As long as you give people that menu of choices. It seems to me that imprudence would come into play if you have a single stock fund where only you know the value, there is not a public market price, and you have not assessed the risk and disclosed it adequately. And all of a sudden the investor is caught by surprise. At that situation is a hypothetical where you could have imprudence, wouldn't you suggest? Absolutely, Your Honor. And the other thing I'll point out is that it's become more common nowadays, although trends in 401k plans wax and wane, it's become more common for 401k plans to offer what are called brokerage windows. And essentially it's kind of what it sounds like. The window opens up the participant to investing in Apple, or Amazon, or Coca-Cola stock, whatever they think is appropriate for their needs and their risk tolerance. And really under plaintiff's theory, which I think can answer Judge Niemeyer to one of your questions, plaintiff said basically you can never have single company stocks allowed in a 401k plan. That would mean the end of brokerage windows, unless I'm missing something about plaintiff's theory here. Well plaintiff really is just saying that we just can't have single when we're talking about this unusual circumstance of a spinoff of a company stock, and the fiduciary now is put in a position of either I can let people keep the stock that they've invested in this fund previously and divest it if they wish, sell it if they wish, or I can force them to sell it right now. That's the choice. It seems to me though imprudence is hard to argue on those criteria. It seems to me the imprudence issue has to be whether the person making the choice, number one, has a choice, and number two, whether the stock fund, the individual stock fund, is reflected by a public price, a price that reflects the risk. And it seems to me the issue would be that if it does reflect the risk and there is an option, it's hard to conceive of an imprudence. Once you have the Dudenhofer satisfied with respect to the stock in the particular fund, then the question is have you selected a broad enough menu to have differing levels of risk? And if you have here, nobody's challenging the fact that the menu is adequate. There's a bond fund and there's national mutual funds and that type of thing. I agree with that, Your Honor. I mean, lawyers are always wary about stating rules in absolutes, and I'm no exception to that, but I think that's generally correct, Your Honor. The last point I wanted to make goes back to diversification. And that's to point out the, I guess, irony of plaintiff's position here. Because at the time of the spinoff, as it happened, roughly 20 percent, just over 20 percent of the overall plan assets in the Gannett plan were invested in Tegna stock. At the end of that first year, that number had only gone down. The degree of concentration had diminished by the time plaintiff says it was time to force the sale of that stock. And that's just an illogical position to take. Really, all the plaintiff is relying on here is, we think that this all should have happened faster. And that's just based on a legal conclusion of this one-year deadline that plaintiff crafted. It's not based on some rule in ERISA. It's not based on the statute itself. It's just the say-so legal conclusion of plaintiff. And that's not sufficient to get past a Rule 12b-6. All right. Anything else? Unless the court has any other questions, Your Honor, we, of course, request that this court affirm the judgment of the district court. All right. Mr. Porter? Yes, Your Honor. So, a few things. First of all, the Phillips case, the DeFelice case, the Tatum case, the Tibble case, the Eighth Circuit's recent decision in the Washington University case, all involved defined contribution plans with a wide array of investment options. All of those courts recognize that single security stock funds are inherently imprudent. Well, let me ask you, why wouldn't it be imprudent at the time the company split and for the first year? You don't make that allegation. As a matter of fact, it's just to the contrary. In this case, the offering, in this case, just a minute, in this case, as I understand it, Mr. Porter, just a minute, Mr. Porter, just a minute. Yes. In this case, as I understand it, the menu of funds included the Tegna Fund, which represented 21 percent at the time of the year to what, about 17 percent? 16 percent. 16 percent. 16. All right. Right. So, during that period of time, both at divestiture and for a year after, you allege everything is fine. And then all of a sudden you allege there's too much concentration. What prompts, what theory prompts you to say that if it was okay to, as long as the price was fairly disclosed, the risk? Okay. So we don't say it was okay to have 21 percent. What we do say is that a fiduciaries don't turn on a dime. They don't snap their fingers and make things happen. They have to engage in a prudent process to make a determination as to what to do about a particular investment fund. That is the entire nature of the prudent process. And the prudent process commands fiduciaries to take into account the totality of the circumstances of the particular plan. So the totality of circumstances might be the high concentration of the fund, the correlation to Gannett stock, the employee matters agreement, et cetera, et cetera. But, you know, the fiduciaries in Tatum got sued because they acted precipitously without thinking. We think fiduciaries need to think about decisions before making them. That's why we don't require them to sell on day one. We require them to engage in a reasoned, diligent process to evaluate the prudence of the investment and then act on it. As to this sort of broader concern about participant choice and defined contribution plans, there's no reason for this court to carve out an exception from the prudence requirements for single security stock funds. The fact of the matter is, TIBL involved defined contribution plan with an array of investments and the Supreme Court said, you fiduciaries have to remove imprudent investment options. That's your duty. The Supreme Court, the Eighth Circuit said that just recently in a lawsuit involving the University of Washington. It's no defense to a breach of fiduciary duty claims, the court said, to offer an array of investment options through which a participant could theoretically construct a prudently diversified portfolio. Echoing this court's statement. What is the imprudence that you're alleging with respect to holding a stock that satisfies the Dudendorfer standard? In other words, this stock was publicly traded, the risk was revealed. What's the imprudence of holding that stock in a single fund as long as the menu is diversified? It's the uncompensated risk of concentrating too much. It's all your eggs in one basket. That's precisely the risk. That doesn't take into account my hypothetical. My hypothetical is that the investor has a menu from which to choose a broad array of risks, bond funds, mutual funds, and among those is this Tegna fund, the price of which it reveals the risk. Well, Tatum in fact did take this precise scenario into consideration. It relied on Dudenhorfer for the proposition that in an efficient market, a prudent fiduciary can rely on the fact that the security is accurately priced and that all risks that the company faces specifically are impounded in the stock price. But Tatum said that doesn't answer the question. Tatum said that because of the lack of diversity and the high correlation to the companion fund, the other single security stock fund in Tatum, that that risk was not impounded into the stock price. This is exactly the same kind of plan as in Tatum. It's a defined contribution plan with participant choice. The stock fund was frozen. The participants could only sell out of it, but yet this court analyzed Tatum through the lens of the uncompensated risk associated with those presented here. In fact, to try to sort of turn this hypothetical back on your honor, the Tatum court explicitly said, and I'm paraphrasing here, that Dudenhorfer's views as the efficient market provide no comfort for the fiduciaries because it's precisely because the market doesn't account for the extraordinary risk of concentration that a prudent fiduciary can have no reasonable expectation. Well, there's two different issues there. Concentration is one issue. Prudence is another issue. Prudence is disposed of by relying on market price under Dudenhorfer if it satisfies that. Diversification, the argument that the defendants make in this case, diversification is satisfied by the menu, broad menu with broad risks represented, and Tatum's does not say otherwise. But anyway, I understand your argument. I think Tatum does say otherwise, and I think the Supreme Court is in favor of Dudenhorfer. And I'll close with that. Thank you, yeah. All right. I want to thank counsel. I want to recognize that we normally at this point come down and shake hands with counsel in the well of the court. This is a tradition that's unique to the Fourth Circuit, and unfortunately, we have to forego that today. But I'd like to express our greetings of the whole court and thank you for your arguments. They're always very helpful, and we wish you the best under these circumstances. Maybe when you come back to the next case or this case or whenever, we can come down and shake your hand. But thank you very much, and we'll stand adjourned today to the next case. We'll take a five-minute recess to constitute the next case. Thank you both very much. Thank you, guys.
judges: Paul V. Niemeyer, James A. Wynn Jr., Henry F. Floyd